## COAN *v.* FLAGG.

ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

Submitted October 20, 1887. — Decided October 31, 1887.

The entry and survey of lands in the Virginia military district in Ohio, under which the plaintiff claims title, did not invest the owners of the warrant, or their assignee, with an equitable interest in the lands surveyed, as against the United States, for the reason that the excess of the land surveyed beyond that covered by the warrant was so great as to make the survey fraudulent and void; and, consequently, Congress could, by the act of February 18, 1871, 16 Stat. 416, grant the lands at its pleasure.

It was the purpose of the act of February 18, 1871, to grant to the State of Ohio all the lands in the Virginia military district in that State which had not at that time been legally surveyed and sold by the United States. in that sense of the word "sold" which conveys the idea of having parted with the beneficial title; and the lands in controversy, having been surveyed by a survey invalid against the United States, were within that description.

The fourth section of the act of May 27, 1880, 21 Stat. 142, recognized and ratified the title of the defendant in error to the lands in controversy as a purchaser from the Ohio Agricultural and Mechanical College for a valuable consideration.

Copies of official letters from the Commissioner of the General Land Office to a person claiming title under a warrant and survey, reciting the date of the filing of the survey in the office, being verified by the oath of the person who was a clerk in that division of the Land Office and at that time had charge of the matters relating to this subject, and in whose letters

to the parties interested were contained all the decisions of the Commissioner relating to it, are competent evidence to show the time of the filing.

IN equity, in a state court in Ohio, to quiet title and to restrain waste. The answer set up title in respondent. Judgment for complainant, which was affirmed by the Supreme Court of the State on appeal. The defendant sued out this writ of error. The case is stated in the opinion of the court.

*Mr. Charles King, Mr. William B. King, Mr. N. W. Evans,* and *Mr. A. C. Thompson,* for plaintiff in error, cited: *McArthur* v. *Dunn,* 7 How. 262; *Jackson* v. *Clark,* 1 Pet. 628; *Parker* v. *Wallace,* 3 Ohio, 490; *Stubblefield* v. *Boggs,* 2 Ohio St. 216; *Thomas* v. *White,* 2 Ohio St. 540; *Price* v. *Johnston,* 1 Ohio St. 390; *Taylor* v. *Brown,* 5 Cranch, 234; *Holmes* v. *Trout,* 7 Pet. 171; *Saum* v. *Latham,* Wright, O., 309; *Marquez* v. *Frisbie,* 101 U. S. 473; *Johnson* v. *Towsley,* 13 Wall. 72; *Bird* v. *Ward,* 1 Missouri, 398; *Shepley* v. *Cowan,* 91 U. S. 330; *Danforth* v. *Morrical,* 84 Ill. 456; *Brush* v. *Ware,* 15 Pet. 93; *Polk* v. *Wendell,* 5 Wheat. 293; *Griffin* v. *Reynolds,* 17 How. 609; *James* v. *Gordon,* 1 Wash. C. C. 333; *Winn* v. *Patterson,* 9 Pet. 663; *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420; *Dubuque &c. Railroad* v. *Litchfield,* 23 How. 66; *Mills* v. *St. Clair County,* 8 How. 569; *Wilcox* v. *Jackson,* 13 Pet. 498; *Nash* v. *Atherton,* 10 Ohio, 163; *Calhoun* v. *Price,* 17 Ohio St. 96.

*Mr. W. A. Hutchins* and *Mr. George O. Newman* for defendant in error cited: *Fussell* v. *Gregg,* 113 U. S. 550; *Jackson* v. *Clark,* 1 Pet. 628; *Taylor* v. *Myers,* 7 Wheat. 23; *Hoofnagle* v. *Anderson,* 7 Wheat. 212; *Stubblefield* v. *Boggs,* 2 Ohio St. 216; *Thomas* v. *White,* 2 Ohio St. 540; *Price* v. *Johnston,* 1 Ohio St. 390; *Saunders* v. *Niswauger,* 11 Ohio St. 298; *Miller* v. *Kerr,* 7 Wheat. 1.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The judgment sought to be reviewed on the present writ of error was rendered by the Supreme Court of the State of Ohio

in a proceeding begun by Flagg, the defendant in error, to quiet his title and possession to a certain tract of land lying in Nile Township, Scioto County, Ohio, within the Virginia military district, embraced within survey No. 15,882. The judgment of the Supreme Court of Ohio in the case is reported as *Coan* v. *Flagg*, 38 Ohio St. 156.

On the 18th of February, 1871, Congress passed an act to cede to the State of Ohio the unsurveyed and unsold land in the Virginia military district in said State, 16 Stat. 416, which reads as follows :

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the lands remaining unsurveyed and unsold in the Virginia military district in the State of Ohio be, and the same are hereby, ceded to the State of Ohio, upon the conditions following, to wit : Any person who at the time of the passage of this act is a bona fide settler on any portion of said land may hold not exceeding one hundred and sixty acres, so by him occupied, by his preëmpting the same in such manner as the legislature of the State of Ohio may direct."

The lands thus ceded were granted by the State of Ohio to the Ohio Agricultural and Mechanical College. The college claiming the lands in controversy to be embraced within this cession, for a valuable consideration sold and conveyed the same to Flagg, who entered into possession prior to the commencement of this suit. Coan, the original defendant, claims title under :

1st. Exchange military warrant No. 494, issued by the State of Virginia on the 16th day of June, 1840, to the children and heirs of Francis Gordon, a child and heir of John Gordon, the only heir of Thomas Gordon, who was a lieutenant of cavalry in the Continental line of Virginia troops in the Revolutionary War, for 500 acres of land, to be laid off in one or more surveys ;

2d. An entry No. 15,882, purporting to cover 500 acres of land under the foregoing warrant No. 494, made on December 18, 1849, by the said heirs of Francis Gordon and one David F. Heaton, an assignee of part of said warrant ;

3d. A survey under said entry No. 15,882, purporting to contain 400 acres, 375 acres for the heirs of Francis Gordon, and 25 acres for said Heaton, made by said D. F. Heaton, a deputy surveyor of the district, on April 10, 1851, giving the metes and bounds of the lands surveyed, which was duly recorded on December 23, 1851, in the district land office at Chillicothe;

4th. And mesne conveyances from the heirs of said Francis Gordon and said Heaton to Coan.

It is an undisputed fact, appearing on the record, that this survey No. 15,882 embraces in fact 1682 acres.

The answer of Coan, the defendant below, contains the averment that "on the 26th of December, A.D. 1851, the said E. P. Kendrick, surveyor for said district, duly certified said survey, being numbered (the same as said entry) 15,882, to the General Land Office at Washington, D. C., for patent, and that said survey has ever since been on file in said office."

It is stated, however, in a letter addressed by the acting Commissioner of the General Land Office to L. C. Heaton, the executor of David F. Heaton, then claiming title, dated June 18, 1873, and admitted in evidence, that survey No. 15,882 was filed in that office for the purpose of obtaining a patent on the 26th of April, 1852. The same fact is recited in a letter from Willis Drummond, the Commissioner of the General Land Office, dated October 26, 1871, also admitted in evidence, addressed to David F. Heaton, then claiming title. No patent has ever been issued on this entry and survey, for the reason, among others, given in the correspondence between the officers of the Land Department and Heaton, "that the same contained a large excess of land over and above the amount stated therein and actually due in virtue of said warrant exchange No. 494;" the amount of that excess being stated at 1282 acres. This was communicated in a letter from the Commissioner of the General Land Office to L. C. Heaton, dated June 18, 1873, in which it was said that: "This office will not, of course, recognize the validity of any such survey as the foregoing, and must refuse, if there were no other objections, to carry the same into grant, and unless you deny the facts as above stated and wish to offer rebutting testimony, and be heard in reply,

you will understand that the claim for patent in the case of said survey, No. 15,882 is rejected. Should you, however, dispute the correctness of the said resurvey, &c., and will at once advise this office of the fact, every reasonable opportunity will be afforded you to be heard in the case with such evidence as you may desire to present."

On July 11, 1873, the Commissioner of the General Land Office, by a letter of that date, addressed to L. C. Heaton, informed him, in response to his application, made in a letter of June 30, that ninety days from July 11th would be allowed to establish his claim to a patent upon this survey.

On October 10, 1873, the Commissioner wrote to Heaton a letter containing the following: "You were advised on the 18th of June last of the rejection of your application for a patent in the case, but, at your request of the 30th of the same month, the matter was held open for the period above stated to afford you an opportunity to present rebutting testimony, &c. The allotted time having expired and nothing presented on your part to sustain the validity of the said survey, you are hereby advised that the rejection of the case, as stated in my said communication of the 18th of June last, is now made definite and final, so far as this office is concerned." No further action was taken in the Department on the subject.

It also appears that for the 100 acres not embraced in this survey, to make the 500 acres called for by warrant No. 494, another survey was made containing $517\frac{46}{100}$ acres, so that the whole amount of land embraced in the two surveys upon that warrant, nominally for 500 acres, actually embraced an excess of $1699\frac{46}{100}$ acres.

On the 27th of May, 1880, Congress passed an act to construe and define the act of February 18, 1871. The first and second sections of this act are as follows:

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the act ceding to the State of Ohio the lands remaining "unsurveyed and unsold" in the Virginia military district in the State of Ohio had no reference to lands which were

included in any survey or entry within said district founded upon military warrant or warrants upon Continental establishment; and the true intent and meaning of said act was to cede to the State of Ohio only such lands as were unappropriated and not included in any survey or entry within said district, which survey or entry was founded upon military warrant or warrants upon Continental establishment.

"SEC. 2. That all legal surveys returned to the Land Office on or before March third, eighteen hundred and fifty-seven, on entries made on or before January first, eighteen hundred and fifty-two, and founded on unsatisfied Virginia military Continental warrants, are hereby declared valid."

The fourth section is as follows :

"SEC. 4. This act shall not in any way affect or interfere with the title to any lands sold for a valuable consideration by the Ohio Agricultural and Mechanical College, grantee, under the act of February eighteenth, eighteen hundred and seventy-one." 21 Stat. 142.

On the 7th of August, 1882, Congress passed an act in relation to land titles in the Virginia military district of Ohio, as follows :

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That any person in the actual, open possession of any tract of land in the Virginia military district of the State of Ohio, under claim and color of title, made in good faith, based upon or deducible from entry of any tract of land within said district founded upon military warrant upon Continental establishment, and a record of which entry was duly made in the office of the principal surveyor of the Virginia military district, either before or since its removal to Chillicothe, Ohio, prior to January first, eighteen hundred and fifty-two, such possession having continued for twenty years last past under a claim of title on the part of said party, either as entry-man or of his or her grantors, or of parties by or under whom such party claims by purchase or inheritance, and they by title based upon or deducible from such entry by tax sale

or otherwise, shall be deemed and held to be the legal owner of such land so included in said entry to the extent and according to the purport of said entry, or of his or her paper titles based thereon or deducible therefrom.

"SEC. 2. That so much of the act approved February eighteenth, eighteen hundred and seventy-one, entitled ' An Act to cede to the State of Ohio the unsold lands in the Virginia military district in said State,' and of an act approved May twenty-seventh, eighteen hundred and eighty, construing said act of February eighteenth, eighteen hundred and seventy-one, as conflicts with this act, be, and the same is hereby, repealed." 22 Stat. 348.

The Supreme Court of Ohio, in sustaining Flagg's title, decided—

1st. That the entry and survey under which Coan claimed title did not invest the owners of the warrant, or their assignee, with an equitable interest in the lands surveyed as against the United States, for the reason that the excess of land surveyed beyond that covered by the warrant was so great as to make the survey fraudulent and void, and that consequently it was competent for Congress, at the date of the act of February 18, 1871, to grant the lands at its pleasure.

2d. That, without deciding the question whether the lands were granted to the Ohio Agricultural and Mechanical College by the terms of the act of February 18, 1871, the fourth section of the act of May 27, 1880, recognizes and ratifies Flagg's title as a purchaser from the Ohio Agricultural and Mechanical College for a valuable consideration.

These conclusions are contested by the plaintiff in error. In support of his contention, in regard to the first proposition, it is argued that a survey cannot be deemed void and of no effect merely on the ground of an excess beyond the amount called for in the warrant, because a different effect is required to be given to it by the provisions of the act of Congress of July 7, 1838, 5 Stat. 262, the second section of which declares that: "No patent shall be issued by virtue of the preceding section for a greater quantity of land than the rank or term

of service of the officer or soldier, to whom or to whose heirs or assigns such warrant has been granted, would have entitled him to under the laws of Virginia and of the United States regulating the issuing of such warrants; and whenever it appears to the Secretary of War that the survey made by any of the aforesaid warrants is for a greater quantity of land than the officer or soldier is entitled to for his services, the Secretary of War shall certify on each survey the amount of such surplus quantity, and the officer or soldier, his heirs or assigns, shall have leave to withdraw his survey from the office of the Secretary of War and resurvey his location, excluding such surplus quantity in one body from any part of his resurvey, and a patent shall issue upon such resurvey as in other cases," &c.

We agree, however, with the Supreme Court of Ohio in holding that this provision of the law does not meet the difficulty. Whatever application the section may have, according to its terms, it is expressly limited to cases arising under the preceding section of the act, which expired by its own limitation on the 10th of August, 1840, and although extended and revived by the first section of the act of August 19, 1841, 5 Stat. 449, it contained the sole authority for making and returning entries and surveys under Virginia military land warrants, and ceased for that purpose to have any operation on the 3d of March, 1857, by force of the act of March 3, 1855, 10 Stat. 701. So that the right to relief against excessive surveys granted by the second section of the act of July 7, 1838, has not, at all events, existed since 1857. In addition, it is manifest that the second section of the act of July 7, 1838, relied on, does condemn and forbid the issuing of a patent upon a survey calling for a greater quantity of land than the party is entitled to by virtue of the warrant; and in such cases, it being the duty of the department to refuse the patent, the right of the applicant is merely to withdraw his survey, and resurvey his location, excluding such surplus quantity. In the present instance, the patent was refused, and for that reason; but the applicant did not ask leave to withdraw his survey and cause a resur-

vey of the location, and so elected not to avail himself, if he had such right, of the provisions of this section.

It was further contended, however, upon this point, that Congress has recognized the validity of surveys within the district, notwithstanding the quantity embraced in them was excessive, by the proviso in the act of March 2, 1807, 2 Stat. 424, 425, which reads as follows : " *Provided*, That no locations as aforesaid within the above-mentioned tract shall, after the passage of this act, be made on tracts of land for which patents had been previously issued, or which had been previously surveyed; and any patent which may nevertheless be obtained for land located contrary to the provisions of this section shall be considered as null and void."

But it was rightly considered, as we think, by the Supreme Court of Ohio, that the effect of this proviso, which, it was admitted, had been continued in force by subsequent enactments, was merely to withdraw, from subsequent entry and survey, lands actually surveyed, until the previous survey should be withdrawn or set aside, as between locators seeking to appropriate the same tract, and that it cannot have the effect of establishing excessive surveys, whether by mistake or design, as binding upon the government so as to vest an equitable estate in the holder of the warrant, and entitle him to a patent for the whole or a part of the survey.

Counsel for the plaintiff in error, however, claim in argument that the Supreme Court of Ohio erred upon this point in consequence of having overlooked the second section of the act of May 20, 1826, 4 Stat. 189. This section, however, as far as it goes, is identical with the second section of the act of July 7, 1838, above quoted, which is a reënactment of it, the act of May 20, 1826, having expired by its own limitation. The first section of this act extends the time for obtaining warrants until June 1, 1829, to complete locations thereon until June 1, 1832, and to return surveys and warrants to the Commissioner of the General Land Office, in order to obtain patents thereon, until June 1, 1833 ; and the second section is limited in its operation to cases provided for by the preceding section, and, therefore, ceased to operate after the dates therein mentioned.

Counsel for the plaintiff in error also refer to the decisions of this court in *Taylor* v. *Brown*, 5 Cranch, 234, 249, and *Holmes* v. *Trout*, 7 Pet. 171, as supporting the proposition that surplus land will not vitiate a survey; but those cases applied that principle only as between prior and subsequent locators, and do not sustain the proposition that upon such a survey the applicant is entitled, as of right, to obtain a patent from the United States.

The next question is, whether the act of February 18, 1871, taken in connection with the act of May 27, 1880, had the effect of vesting a complete legal and equitable title to these lands in Flagg. It is argued that the lands in question were not embraced within the terms of the cession to the State of Ohio used in the act of February 18, 1871. The lands ceded to the State by virtue of that act are described as those "remaining unsurveyed and unsold in the Virginia military district in the State of Ohio." The word "unsold," as used in the act, it is claimed, and may be admitted to be, entirely inappropriate. No land within that district had ever been sold, in the literal sense of that word, nor was it subject to sale. It was held in trust by the United States, first, for the purpose of satisfying donations made by the State of Virginia to her officers and soldiers in the Revolutionary War, to whom warrants might be issued as a reward for services. The remainder, after the satisfaction of those bounties, was held by the United States for their own use. All of this military tract, therefore, not appropriated according to law to the first of these uses, belonged to the United States, to be disposed of in its discretion. It was competent for Congress to grant to the State of Ohio any of these lands not subject to the trust, and at the date of the act of February 18, 1871, the time within which it was competent to appropriate any of the lands to the satisfaction of warrants issued by the State of Virginia had expired. The trust had been satisfied, and may be regarded as having been extinguished. Whatever of these lands, therefore, remained at that time, which had not been appropriated in accordance with the terms of existing law, so as to secure to the claimant a legal right to call for a patent, was

subject to the disposal of the United States for its own use and according to its own pleasure. It is in view of this condition of things that the cession contained in the act of February 18, 1871, must be considered and construed.

It is contended in argument by the plaintiff in error that the lands embraced and conveyed by the cession contained in the act of February 18, 1871, and therein described as " unsurveyed and unsold," must be understood to mean those which had not at that time been appropriated under existing laws so as to prevent subsequent locations by other entries and surveys upon Virginia military land warrants. And as such appropriation was then forbidden, as respects subsequent locators, by existing laws, wherever the land had been actually surveyed, although the survey might have contained a surplus which would deprive the locator of his right to call for a patent for the whole quantity from the United States, the Ohio Agricultural and Mechanical College, claiming as grantee under the State of Ohio, cannot be considered as having any better or other rights than those of a subsequent locator. And from this the conclusion is deduced that the lands in controversy could not have passed by the terms of the act of February 18, 1871. But this conclusion is not admissible. The State of Ohio, under the act of February 18, 1871, was not in the position of a subsequent locator under existing laws; it was a grantee under the terms of a new law directly from Congress itself, and was not in the attitude of an applicant to the officers of the Land Department, under previous laws, asking to make a location upon lands which had been already withdrawn from subsequent location by an entry and an actual survey. Congress had dominion and an absolute power of disposal of all the lands in the Virginia military land district which at that time had not become legally appropriated by entry and survey, so as to entitle the locator, by virtue of his equitable estate actually vested under existing law, to call upon the officers of the Land Department to complete his legal title by the issue of a patent.

The meaning of the act of February 18, 1871, therefore, seems to be to grant to the State of Ohio all the lands in the

Virginia military district which had not at that time been legally surveyed and sold by the United States, in that sense of the word which conveys the idea of having parted with a beneficial title. The lands in controversy were within that description. They had been surveyed, it is true, in point of fact, but the survey was not lawful and valid as against the United States, although it might operate to prevent a subsequent location under existing law. In point of fact, the officers of the Land Department refused to recognize the survey as binding, and rejected the application for the issue of a patent upon it. Upon this construction of the act of February 18, 1871, the officers of the Land Department undoubtedly acted, as is evident from the terms of the act of May 27, 1880. That act was passed expressly for the purpose of construing and defining the act of February 18, 1871, in order to change the interpretation which had in fact been put upon it. It declared that "the lands remaining 'unsurveyed and unsold' in the Virginia military district in the State of Ohio had no reference to lands which were included in any survey or entry within said district founded upon military warrant or warrants upon continental establishment," and that "the true intent and meaning of said act was to cede to the State of Ohio only such lands as were unappropriated and not included in any survey or entry within said district, which survey or entry was founded upon military warrant or warrants upon continental establishment."

Supposing this legislative interpretation to mean that the unappropriated lands referred to were such as had not been included in any survey or entry founded upon a military warrant, whether that survey was legal or illegal under previous laws, nevertheless, we are of the opinion, with the Supreme Court of Ohio, that the fourth section of the act must be held to have the legal operation and effect of confirming and ratifying previous titles made by the Ohio Agricultural and Mechanical College, under the act of February 18, 1871. The fourth section declares that "this act shall not in any way affect or interfere with the title to any land sold for a valuable consideration by the Ohio Agricultural and Mechanical Col-

lege, grantee, under the act of February 18, 1871." If the title of the Ohio Agricultural and Mechanical College, under the act of February 18, 1871, was valid, the act of May 27, 1880, giving for the future a new interpretation to that act, could not have the effect of divesting its title. If, on the other hand, the title to lands sold by the Ohio Agricultural and Mechanical College, under claim of title by virtue of the act of February 18, 1871, was unsupported by the terms of that act, then section 4 of the act of May 27, 1880, can have effect only as operating to confirm that title. This it was competent for Congress to do — no vested rights intervening — and this, in our opinion, is what they have done by the act of May 27, 1880.

By the act of August 7, 1882, 22 Stat. 348, which, however, does not affect the present case, Congress found it necessary to go still farther and quiet the title of all persons claiming lands in the Virginia military district who had been in actual and open possession thereof for twenty years, under claim and color of title made in good faith, based upon, or deducible from, any entry founded upon a military warrant upon continental establishment, recorded in the office of the principal surveyor within the district prior to January 1, 1852.

We are, therefore, of opinion that the Supreme Court of Ohio did not err in either of the propositions on which its judgment was based.

There is another view which confirms this conclusion. It was decided by this court in the case of *Fussell* v. *Gregg*, 113 U. S. 550, upon a careful and detailed review of all the legislation on the subject, that it was essential to the vesting of any interest under an entry and survey within the Virginia military land district, made prior to January 1, 1852, that the survey should be returned to the Commissioner of the General Land Office at Washington, on or before that date, and that the failure to do so discharged "the land from any claim founded on such location and survey," and extinguished "all right, title, and estate previously acquired thereby." Such lands might, therefore, very properly be considered, in contemplation of law, as "unsurveyed." This continued to be the

law until the passage of the act of May 27, 1880, by the second section of which it was declared, "that all legal surveys returned to the land office on or before March 3, 1857, on entries made on or before January 1, 1852, and founded upon unsatisfied Virginia military continental warrants, are hereby declared valid." The survey under which Coan claims title in the present case, was not filed, as appears from evidence in the record, in the General Land Office until April 26, 1852. It is contended by the plaintiff in error that it is otherwise admitted in the pleadings, on the ground that the answer of Coan averred, that, "on the 26th of December, A.D. 1851, the said E. P. Kendrick, surveyor for said district, duly certified said survey, being numbered (the same as said entry) 15,882, to the General Land Office at Washington, D. C., for patent, and that said survey has ever since been on file in said office." This is not a distinct and unequivocal averment of the fact that the survey had been filed in the General Land Office on or before January 1, 1852, but only that it had been duly certified by the district surveyor prior to that date. But, construing it as claimed, it, nevertheless, was not admitted in the pleadings, the reply of the plaintiff expressly denying the validity of the entry and survey.

Objection is also made and was taken in the court below to the admission of the evidence on which the fact rests, that the survey was not filed until April 26, 1852, in the General Land Office. This proof consists in copies of official letters written by the Commissioner of the General Land Office to Heaton, then claiming title under the warrant and survey, reciting the fact, which copies were sworn to by a witness, formerly a clerk in the General Land Office, and acquainted with the facts, he having, as such clerk, in fact written the originals himself for the Commissioner of the General Land Office, by whom they were signed. We are not referred by counsel in argument to any authority in support of the objection, and we do not see upon what principle it can be maintained. The witness testified that at the time the letters were written he was the clerk in charge of the division relating to the Virginia military district, and that all of the decisions of

the Commissioner of the General Land Office were contained in letters written by him to the parties interested. We think the evidence was competent, and in fact it was uncontroverted.

We find no error in the judgment of the Supreme Court of Ohio. It is therefore

*Affirmed.*